﻿Citation Nr: AXXXXXXXX
Decision Date: 11/29/19 Archive Date: 11/29/19

DOCKET NO. 190419-8009
DATE: November 29, 2019

ORDER

Entitlement to service connection for right lower extremity muscle atrophy is denied.

Entitlement to service connection for left lower extremity muscle atrophy is denied.

Entitlement to service connection for akathisia is denied.

Entitlement to service connection for chronic fatigue syndrome is denied.

Entitlement to an initial disability rating in excess of 70 percent for posttraumatic stress disorder (PTSD), to include major depressive disorder and other specified personality disorder, from April 27, 2018, to March 28, 2019, is denied. 

REMANDED

Entitlement to a total disability rating based upon individual unemployability (TDIU) due to service-connected disabilities is remanded.

FINDINGS OF FACT

1. The preponderance of the evidence of record is against finding that the Veteran has a current diagnosis of right lower extremity muscle atrophy that began during service or is at least as likely as not related to an in-service injury, event, or disease. 

2. The preponderance of the evidence of record is against finding that the Veteran has a current diagnosis of left lower extremity muscle atrophy that began during service or is at least as likely as not related to an in-service injury, event, or disease. 

3. The preponderance of the evidence of record is against finding that the Veteran has had akathisia at any time during or approximate to the pendency of the claim. 

4. The evidence of record fails to establish that the Veteran has a separate and distinct disorder responsible for fatigue for which service connection may be established. Rather, his fatigue is a symptom of depression, sleep apnea, and restless leg syndrome.

5. The severity, frequency, and duration of the Veteran’s psychiatric symptoms did not more closely approximate total occupational and social impairment.

CONCLUSIONS OF LAW

1. The criteria for service connection for right lower extremity muscle atrophy are not met. 38 U.S.C. §§ 1101, 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307.

2. The criteria for service connection for left lower extremity muscle atrophy are not met. 38 U.S.C. §§ 1101, 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307.

3. The criteria for service connection for akathisia are not met. 38 U.S.C. §§ 1101, 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307.

4. The criteria for service connection for chronic fatigue syndrome are not met. 38 U.S.C. §§ 1101, 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307.

5. The criteria for an initial disability rating in excess of 70 percent for the Veteran’s service-connected psychiatric disability have not been met. 38 U.S.C. §§ 1101, 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.126, 4.130, Diagnostic Code 9411 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from April 1998 to March 2002 in the Navy and from August 2002 to August 2003 in the Army National Guard. 

The rating decision on appeal was issued in March 2019. The Veteran timely appealed the issues of entitlement to service connection for right and left lower extremity muscle atrophy, akathisia, chronic fatigue syndrome, and entitlement to a disability rating in excess of 70 percent for his service-connected psychiatric disability to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). The Veteran did not appeal the issues of entitlement to service connection for bipolar disorder and benign fasciculation or to a disability rating in excess of 30 percent for primary generalized dystonia with myoclonus; therefore, these issues are not before the Board.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The U.S. Court of Appeals for Veterans Claims (Court) has held that “Congress specifically limits entitlement to service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability, there can be no valid claim.” Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

Where the evidence shows a “chronic disease” in service or “continuity of symptoms” after service, the disease shall be presumed to have been incurred in service. For the showing of a “chronic” disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With a chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of “continuity of symptoms” after service is required for service connection. 38 C.F.R. § 3.303(b).

Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137 (2012); 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.

1. Entitlement to service connection for right and left lower extremity muscle atrophy. 

The Veteran contends that service connection is warranted for right and left lower extremity muscle atrophy.

The AOJ found that VA treatment records dated in January 2018 showed muscle atrophy of both hips and a July 2018 VA examination showed a diagnosis of muscle atrophy of the bilateral calves of unclear etiology.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that the Veteran does not have current bilateral lower extremity muscle atrophy that began during service or is at least as likely as not related to an in-service injury, event, or disease. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

Turning to the evidence of record, the Veteran’s service treatment records are silent for complaints of or treatment for muscle atrophy and an October 2003 private treatment record was negative for atrophy or weakness. 

VA treatment records dated in October 2013 and a June 2017 VA peripheral nerves examination were negative for atrophy. 

In December 2017, the Veteran reported an injury to his hip after a bicycle accident. A January 2018 CT scan revealed a muscle tear or denervation injury of the right gluteus maximus muscle. The right gluteus maximum muscle was smaller than left, a sequela of the denervation injury. An incidental finding of bilateral femoral head avascular necrosis was noted. 

A March 2018 VA physical therapy note reflects that Veteran reported a December 2017 bicycle accident resulting in right hip pain. He reported the pain became severe and developed into an indentation in the muscle that spread across the buttock over several weeks. He further reported he was essentially bed bound for two months. Upon examination, the Veteran had a right hip indentation, weakness in his legs, and calf atrophy. 

An April 2018 VA examination of the central nervous system and neuromuscular diseases was negative for atrophy. 

A July 2018 VA examination of the central nervous system and neuromuscular diseases reflects that the Veteran reported his muscle calves were becoming atrophic for unknown reason. Upon examination, the Veteran had normal strength and the examination was negative for weakness or atrophy. However, the examiner provided a diagnosis of muscle atrophy of the bilateral calves of unclear etiology. 

In September 2018, the Veteran reported that he felt as if his muscles were atrophied; however, a December 2018 VA examination and January 2019 VA treatment record were negative for atrophy. A February 2019 CT scan of the lower extremities noted minimal fatty atrophy of the distal right gluteus maximus muscle; otherwise, visualized portions were unremarkable. 

After a review of the evidence of record, the Board finds that the record does not support the Veteran having current bilateral lower extremity muscle atrophy that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The evidence of record is silent for complaints of or treatment for lower extremity muscle atrophy until March 2018, more than a decade after his separation from service. Furthermore, the evidence reflects that the Veteran’s muscle atrophy of the bilateral calves was acute, with the Veteran reporting having been bed bound for two months and an April 2018 VA examiner finding no atrophy of the lower extremities. 

While the Veteran believes he has current muscle atrophy of the lower extremities, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Additionally, the Board notes that while the July 2018 VA examiner provided a diagnosis of atrophy of the bilateral calves of unclear etiology, the examiner indicated that the Veteran’s claims file and medical records were not reviewed. It appears that the examiner, who found no evidence of atrophy upon examination of the Veteran, relied on the Veteran’s self-reported history when providing a diagnosis of muscle atrophy of unclear etiology. The Board notes that at least one examiner has found the Veteran to be an inconsistent and unreliable historian, possibly motivated by secondary gain and/or specialized attention. 

Consequently, the Board gives more probative weight to the competent medical evidence of record, which shows that while the Veteran had lower extremity muscle atrophy after sustaining an injury during a bicycle accident, it occurred after the Veteran reported being bed bound for two months and improved several months after his accident, with VA examinations and VA treatment records negative for findings of atrophy upon examination since April 2018. Furthermore, this occurred more than a decade after the Veteran separated from service and the evidence does not show that the lower extremity muscle atrophy is otherwise related to an in-service injury, event, or disease.

Even if the Board were to consider the February 2019 CT scan which documented minimal muscle atrophy of the gluteus maximus, the evidence shows the gluteus maximus indentation was initially the result of a muscle tear or denervation injury sustained during a December 2017 bicycle accident. The Board notes that the Veteran is not service-connected for his hip disabilities. 

As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Accordingly, the claims of service connection for right and left lower extremity muscle atrophy are denied.

2. Entitlement to service connection for akathisia is denied. 

The Veteran contends that service connection is warranted for akathisia. 

The AOJ found that VA treatment records dated in August 2014 and April 2018 showed a diagnosis akithisia. Additionally, a July 2018 VA examination showed a diagnosis of akathisia of unclear etiology. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that the Veteran does not currently have akathisia that began during service or is at least as likely as not related to an in-service injury, event, or disease. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

Turning to the evidence of record, the Veteran’s service treatment records are silent for complaints of or treatment for akathisia. A March 1998 entrance examination noted the Veteran had muscular cramps occasionally, but the Veteran denied having any in recent years. 

VA treatment records dated in October 2013 show that the Veteran complained of jerking movement and muscle spasms beginning one year prior. He was assessed with ataxia, painful myoclonus, rule out Guillain-Barre syndrome versus conversion disorder. 

A January 2014 VA neurology consult noted a history of abnormal involuntary movements beginning one year prior. Upon examination, the clinician found hyperkinetic movements, predominately in the trunk, with elements of restlessness and improvement with distraction, and recommended follow-up testing. A March 2014 VA genetics counseling note indicated a history of akathisia, myoclonic disorder, and repetitive rocking movements. Genetics testing for Huntington’s disease was negative. An April 2014 neurology follow-up notes that the Veteran did not have a specific neurological syndrome or disorder per clinical evaluations and testing, but that the Veteran had generalized muscle spasms that they would continue to monitor. A March 2015 VA neurology consult indicated that the Veteran’s movement disorder had a psychoemotional component.

A May 2017 neuropsychology assessment notes an absence of abnormalities or spasms during the interview or testing. Results of the MMPI-2-RF tests were elevated on a clinical scale associated with somatic complaints. The clinician explained that individuals with elevations on this scale often have a psychological contribution to their somatic problems. Overall, the results revealed that there was likely a significant psychological component to the Veteran’s muscle spasms, although it did not rule out a physiological portion as well. 

An April 2018 VA examination reflects that the Veteran reported spasms in his right leg beginning while he was in the Navy and that they worsened in his thirties. The Veteran described a sensation of random movements and spasms in every muscle except for his tongue. After examining the Veteran and reviewing the evidence, the examiner provided a diagnosis of primary generalized dystonia with myoclonus, a diagnosable but medically unexplained chronic multi-symptom illness of unknown etiology.

A July 2018 VA examination reflects that the Veteran reported that he could not sit still and had been diagnosed with akathisia in 2011. The examiner noted mild bilateral upper extremity tremors upon examination. The examiner found that the Veteran did not have Parkinson’s disease, but provided diagnoses of primary generalized dystonia with myoclonus and akathisia of unclear etiology. The examiner recommended the Veteran follow-up with his primary care physician. 

A December 2018 VA examination report reflects that the Veteran reported muscle spasms all over and described pain in his legs relieved by movement. The examiner noted the Veteran had variously been diagnosed with dystonia, myoclonus, movement disorder, dyskinesia, myoclonic jerks, and akathisia as part of his differential diagnosis, and while he had seen multiple neurologists, no firm diagnosis had been established. The examiner noted the Veteran had recently been diagnosed with restless leg syndrome in December 2018. 

The examiner defined akathisia as a condition of motor restlessness with a feeling of muscular quivering and an urge to move about constantly or, the inability to sit still. The examiner indicated it was a common effect of neurological drugs and that the condition was also related to anxiety. The examiner noted a 2015 VA treatment record finding that the Veteran’s spasms had a significant psychological basis was supported by mental health examiners suggesting a conversion reaction. The examiner found a considerable discrepancy between the Veteran’s reports and clinician findings, most notably that while the Veteran had frequent complaints of neurologic symptoms, the overwhelming majority had not been seen by clinicians and a treating clinician had noted that the movement condition improved with distraction. The examiner noted the Veteran continued to have an active lifestyle of running, bicycle riding, practicing yoga, and shopping and cooking. The examiner noted the Veteran had had extensive evaluations by multiple caregivers, all of which failed to confirm any condition and the examiner indicated that the current examination was negative for any evidence of motor/movement disorder. 

After examining the Veteran and reviewing the claims file, the December 2018 VA examiner opined that it was less likely as not that the Veteran had any current significant neurologic condition related to military service or unknown environmental factors. Rather, the examiner opined it was more likely than not that the Veteran’s symptoms were related to the somatization effects of his congenital bipolar condition and strong family history of mental dysfunction than to any medical condition. The examiner concluded that the overwhelming preponderance of the evidence did not suggest an unexplained neurological condition, but rather the more common situation of somatization associated with a common mental illness condition. 

The examiner further opined that it was less likely than not that any preexisting muscle or spasm condition was aggravated beyond any expected progression by the Veteran’s service. The examiner explained that cramps were noted on the Veteran’s entrance examination, but service treatment records were silent for complaints of cramps in service, and post-service treatment records were silent for cramps until 2012, ten years after separation from service. 

After a review of the evidence of record, the Board finds that the medical evidence of record does not support the Veteran having current diagnosis of akathisia that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The evidence of record is silent for complaints of or treatment for muscle spasms until 2012, nearly a decade after his separation from service. Furthermore, the evidence reflects that the Veteran’s muscle spasms are a symptom of his psychiatric disability, rather than a separate diagnosable disability of akathisia. 

While the Veteran believes he has a current diagnosis of akathisia, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Additionally, the Board notes that while the July 2018 VA examiner provided a diagnosis of akathisia of unclear etiology, the examiner indicated that the Veteran’s claims file and medical records were not reviewed. It appears that the examiner relied on the Veteran’s self-reported history when providing a diagnosis of akathisia with unknown etiology. 

Consequently, the Board gives more probative weight to the competent medical evidence of record, which shows that while the Veteran was initially provided a diagnosis of akathisia, the most recent VA examinations and VA treatment records have attributed the Veteran’s spasms to his psychiatric disability rather than to a separate diagnosable condition. The Board notes that the Veteran is service-connected for primary generalized dystonia, effective January 26, 2017.

As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Accordingly, the claim of service connection for akathisia is denied.

3. Entitlement to service connection for chronic fatigue syndrome. 

The Veteran contends that service connection is warranted for chronic fatigue syndrome. 

The AOJ found that VA treatment records dated in November 2013 and June 2017 showed complaints of fatigue. Additionally, a July 2018 VA examination showed a diagnosis of chronic fatigue of unclear etiology.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board notes that the Veteran currently suffers from fatigue. However, the Board concludes that the Veteran’s fatigue is a symptom associated with his depression, sleep apnea, restless leg syndrome, and resulting sleep disturbances, rather than a separate and distinct disability. Evidence of a present disability is necessary before service connection may be granted. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) (“Congress specifically limits entitlement to service-connected disease or injury where such cases have resulted in a disability . . . in the absence of a proof of present disability there can be no claim.”). The requirement of a “current disability” is satisfied if a disorder is diagnosed at the time a claim is filed or at any time during the pendency of the appeal. See Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). As such, service connection must be denied. 

A July 2018 VA examination report reflects that the Veteran reported onset of fatigue in 2011 that worsened in 2016. Upon examination, the Veteran did not exhibit signs or symptoms of chronic fatigue syndrome. The examiner determined that the Veteran did not have chronic fatigue syndrome; however, the examiner provided a diagnosis of chronic fatigue and advised the Veteran to follow up with his primary care provider. 

A December 2018 VA examination report reflects that the Veteran reported chronic fatigue with onset with his muscle spasms or dystonia. The Veteran reported he has trouble sleeping at night due to restless legs and reported that his fatigue had improved a little since starting ropinirole, a medication used to treat restless leg syndrome. The Veteran also reported difficulty using his CPAP and that sleep apnea also interfered with his sleep. The Veteran denied being diagnosed with chronic fatigue syndrome. Upon examination, the Veteran did not exhibit signs or symptoms attributable to chronic fatigue syndrome. The examiner noted the Veteran had been treated for depression, and that depression was a well-known cause of sleep disturbance and fatigue. After reviewing the claims file and examining the Veteran, the examiner opined that it was less likely as not that the Veteran had chronic fatigue syndrome, as the Veteran did not meet the published guidelines for a diagnosis of chronic fatigue syndrome. Rather, the examiner opined that it was more likely as not that the Veteran’s fatigue was related to his underlying depression, sleep apnea, restless leg syndrome, and resulting sleep disturbances. 

While the Veteran believes he has a separate, compensable disability, he is not competent to provide a diagnosis in this case. The issue is medically complex and requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Additionally, the Board notes that while the July 2018 VA examiner provided a diagnosis of chronic fatigue of unclear etiology, the examiner indicated that the Veteran’s claims file and medical records were not reviewed. It appears that the examiner relied on the Veteran’s self-reported history when providing a diagnosis of chronic fatigue of unclear etiology. 

Consequently, the Board gives more probative weight to the competent medical evidence, which suggests that the Veteran’s fatigue is a symptom, rather than a separate and distinct disability.

As the evidence indicates that the Veteran’s fatigue is a symptom associated with his depression, sleep apnea, and restless leg syndrome, rather than a separate and distinct disability, service connection is not warranted. Accordingly, the Board denies the Veteran’s claim. 

As discussed below, the Board has considered the Veteran’s sleep disturbances as part of his claim for disability rating in excess of 70 percent for his service-connected psychiatric disability.

Increased Ratings

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155 (2017); 38 C.F.R. § 4.1 (2017). Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3 (2017). 

Where entitlement to compensation has already been established and an increase in disability rating is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Within that context, VA must assess the level of disability from the date of initial application for service connection and determine whether the level of disability warrants the assignment of different disability ratings at different times over the life of the claim, a practice known as a “staged rating.” See Fenderson v. West, 12 Vet. App. 119 (1999). 

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Generally, the Board has been directed to consider only those factors contained wholly in the rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); but see Mauerhan v. Principi, 16 Vet. App. 436 (2002) (finding it appropriate to consider factors outside the specific rating criteria in determining level of occupational and social impairment). 

The standard of proof to be applied in decisions on claims for veteran’s benefits is set forth in 38 U.S.C. § 5107 (2012). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102 (2017). When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996).

Entitlement to a disability rating in excess of 70 percent for posttraumatic stress disorder (PTSD), to include major depressive disorder and other specified personality disorder, from April 27, 2018, to March 28, 2019.

The Veteran contends that an increased rating is warranted for his posttraumatic stress disorder (PTSD), to include major depressive disorder and other specified personality disorder (hereinafter “psychiatric disability”). 

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a “holistic analysis” that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

The Veteran’s PTSD is currently evaluated as 70 percent disabling under Diagnostic Code (DC) 9411 of the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130, DC 9411 (2017). Thus, the issue in this appeal is whether the Veteran’s associated symptoms caused the level of impairment required for a disability rating of 100 percent.

The Board concludes that the Veteran’s symptoms did not cause the level of impairment required for a disability rating of 100 percent. The Veteran’s symptoms and resulting level of impairment are more closely approximated by the symptoms associated with a 70 percent rating.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned when symptoms such as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name cause total occupational and social impairment.

When determining the appropriate disability evaluation to assign, the Board’s primary consideration is a Veteran’s symptoms, but it must also make findings as to how those symptoms impact a Veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013). The use of the term “such as” in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). Thus, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Id. at 442. Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the Veteran’s impairment must be “due to” those symptoms; a Veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118. 

In Golden v. Shulkin, No. 16-1208 (U.S. Vet. App. April 19, 2017), the Court held that, given that the Diagnostic and Statistical Manual for Mental Disorders, Fifth Edition (DSM-5) abandoned the Global Assessment of Functioning (GAF) scale and that VA has formally adopted the DSM-5, GAF scores are inapplicable to assign a psychiatric rating in cases where the DSM-5 applies when the appeal was certified after August 4, 2014. The Veteran appealed this issue in April 2019; thus, the DSM-5 applies and GAF scores are inapplicable. 80 Fed. Reg. 14, 308 (March 19, 2015).

Turning to the evidence of record during the relevant temporal period, or from April 27, 2018, to March 28, 2019, an April 2018 VA chronic fatigue syndrome examination was negative for gross impairment in thought processes or communication

VA treatment records dated in April and May 2018 show that the Veteran’s mood was congruent, affect was appropriate, and thought content, speech, and coordination were normal.

A May 2018 VA examination report shows the Veteran was dressed appropriately and mood was congruent, but his range of affect was blunted. Thought processes were linear and logical, without indication of psychosis. The examiner indicated the Veteran did not appear to pose any threat of danger or injury to his self or others. The examiner found symptoms of depressed mood, anxiety, suspiciousness, panic attacks occurring weekly or less often, chronic sleep impairment, mild memory loss, flattened affect, disturbances of motivation or mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, including work or a work-like setting, obsessional rituals which interfere with routine activities, and impaired impulse control, such as unprovoked irritability with periods of violence, resulting in occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The examiner diagnosed the Veteran with PTSD; major depressive disorder, recurrent; alcohol abuse disorder, moderate, in sustained remission; and other specified personality disorder. Further, the examiner indicated that the Veteran’s sleep disturbances and anxiety were symptoms of his PTSD and depression.

An August 2018 VA treatment record shows the Veteran was pleasant and cooperative, oriented, and presented with appropriate behavior and regular speech. Mood was depressed and affect congruent. The Veteran reported suicidal/homicidal/assaultive intent without plan, but thought processes were logical and without indication of psychosis. Memory was adequate and attention, insight, and judgment were good. 

In September and November 2018, the Veteran received VA inpatient psychiatric care for suicidal ideation for three and six days, respectively. The Veteran’s appearance ranged from sickly and disheveled with poor eye contact to well-groomed; speech was normal and appropriate; the Veteran was oriented without delusions or hallucinations; mood was described as dysthymic, depressed, anxious, worried, and futile; affect ranted from modulated and flat to congruent and appropriate; thought processes ranged from circumstantial and preoccupied to goal-directed; concentration and memory were described as intact and fair; and insight and judgment described as poor, impaired, and limited to intact. 

VA outpatient treatment records from November 2018 onward show the Veteran presented as alert and oriented, cooperative with good eye contact, with euthymic mood and congruent affect. Psychomotor activity and speech were normal, thoughts were goal-directed, logical, and coherent, without evidence of delusion or hallucination. The Veteran denied suicidal or homicidal ideation and insight and judgment were described as good and intact.

Based upon the evidence of record, including that specifically discussed above, the Board concludes that a disability rating in excess of 70 percent is not warranted. Specifically, the Board finds the level of impairment caused by the Veteran’s symptoms more closely approximates the level associated with a 70 percent rating. The Veteran experienced occupational and social impairment with reduced reliability and productivity with deficiencies in most areas, with symptoms predominantly manifested by suicidal ideation, depressed mood, and sleep disturbances. 

The Board further finds that the Veteran’s psychiatric disability did not, at any time, more nearly approximate total occupational and social impairment. Medical records indicate that the Veteran did not experience any delusions or hallucinations, gross impairment in thought processes or communication, or grossly inappropriate behavior. The Veteran’s memory was never so impaired that he has forgotten the names of close relatives, his occupation, or his own name, nor was he disoriented to time and place. The Board notes that the Veteran expressed suicidal ideation, which is similar to persistent danger of self-harm, which is contemplated by the 100 percent criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 19 (2017). However, the severity, frequency, and duration of the Veteran’s suicidal ideation has not risen to the level contemplated by the 100 percent disability rating. Beyond inpatient treatment in September and November 2018, the Veteran regularly denied thoughts, intent, or a plan involving self-harm or harm to others in existing treatment records and during the May 2018 VA examination.

Thus, the Board finds that a disability rating in excess of 70 percent is not warranted for the Veteran’s service-connected PTSD in this case. See 38 C.F.R. § 4.130, Diagnostic Code 9411. The preponderance of evidence is against the Veteran’s claim, there is no reasonable doubt to be resolved, and the claim must therefore be denied. 38 U.S.C. § 5107(b) (2012); 38 C.F.R. §§ 3.102, 4.3 (2017); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

REASONS FOR REMAND

Entitlement to a total disability rating based upon individual unemployability (TDIU) due to service-connected disabilities is remanded.

Finally, the issue of entitlement to a TDIU was raised as part of the Veteran’s claim for an increased rating for his service-connected psychiatric disability in the April 2019 VA Form 10182 (Decision Review Request: Board Appeal (Notice of Disagreement)). See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). The AOJ has not developed this issue; therefore, the Board cannot adjudicate this issue. A remand of the claim for entitlement to a TDIU is required. 

The matter is REMANDED for the following action:

Ask the Veteran to complete a VA Form 21-8940 (Application for Increased Compensation Based on Unemployability) to obtain relevant employment information. 

 

 

K. Parakkal

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Owen, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.